## CIRCUIT COURT OF MADISON COUNTY

Early Settlers Ins. Co. et al.

v.

John T. Marshall, etc., et al.

January 22, 1991

Case No. 1190

By JUDGE LLOYD C. SULLENBERGER

Tavner H. Marshall (decedent) died as a result of a motor vehicle accident on June 30, 1988. His administrators sued James Lewis Weakley (tortfeasor). The tort suit was settled for $110,000.00. The insurance companies involved have been unable to decide how the settlement should be prorated among them.

Early Settlers Insurance Company (Early Settlers) and Virginia Farm Bureau Mutual Insurance Company (Virginia Farm Bureau) brought a declaratory judgment action naming as defendants decedent's administrators, tortfeasor, Liberty Mutual Insurance Company (Liberty Mutual) and Great American Insurance Company (Great American).

Tortfeasor was insured for bodily injury liability in the amount of $50,000.00 by Southern Mutual Insurance Company, not a party to this declaratory judgment suit because clearly Southern Mutual pays the first $50,000.00 of the settlement.

At time of accident, decedent was operating a motorcycle owned by his father, John T. Marshall (the father). Decedent was a resident of his father's household. Virginia

Farm Bureau had issued a policy to the father covering a 1964 Chevrolet and the motorcycle, the policy providing $30,000.00/$50,000.00 uninsured/underinsured coverage on each vehicle.

Virginia Farm Bureau had also issued to the father a policy covering a 1982 Mercury, a 1973 GMC, and a 1977 Oldsmobile, each with $30,000.00/$50,000.00 uninsured/underinsured coverage.

Early Settlers had issued to the father a policy on a 1974 Chevrolet with $100,000.00/$300,000.00 uninsured/underinsured coverage.

Liberty Mutual had issued a policy to the father on a 1972 GMC dump truck with $100,000.00/$300,000.00 uninsured/underinsured coverage.

Great American had issued to decedent a policy on a 1988 Ford with $25,000.00/$50,000.00 uninsured/underinsured coverage.

Early Settlers and Virginia Farm Bureau argue that since the tortfeasor's insurer paid the first $50,000.00 of the settlement amount, a credit for that amount against the underinsurance coverage should be allowed, first $30,000.00 to Virginia Farm Bureau, offsetting its coverage on the motorcycle which decedent was riding. A remaining $20,000.00 credit should be prorated against the $30,000.00 Virginia Farm Bureau policy on the Mercury, GMC, and Oldsmobile; against the $100,000.00 Early Settlers policy on the 1974 Chevrolet; against the $100,000.00 Liberty Mutual policy on the 1972 GMC dump truck; and against the $25,000.00 Great American policy on the 1988 Ford. Thus, the $60,000.00 payable by the underinsurance carriers should be paid $7,057.41 by Virginia Farm Bureau; $23,530.71 by Early Settlers; $23,530.71 by Liberty Mutual; and $5,881.17 by Great American.

Liberty Mutual argues that while the underinsurance carriers pay only the $60,000.00 not paid by the tortfeasor's liability carrier, no credit exists for the $50,000.00 paid by the tortfeasor's liability carrier against the underinsurance coverage. The underinsurance coverage on the vehicle being operated by the decedent, $30,000.00 by Virginia Farm Bureau on the motorcycle, is first paid toward the $60,000.00. The remaining $30,000.00 due is paid by prorating the individual underinsured coverages without intrapolicy stacking so that Virginia. Farm Bureau

pays $3,600.00 from its $30,000.00 policy on the Mercury/GMC/Oldsmobile; so that Early Settlers pays $11,700.00 from its $100,000.00 policy on the 1974 Chevrolet; so that Liberty Mutual pays $11,700.00 from its $100,000.00 policy on the GMC dump truck; and so that Great American pays $3,000.00 from its $25,000.00 policy on the 1988 Ford.

Great American argues that as to the policies providing coverage for multiple vehicles, intrapolicy stacking is appropriate to determine the full underinsurance coverage available to be prorated.

Great American further argues that a $50,000.00 credit is due Virginia Farm Bureau on its policy covering the motorcycle/1964 Chevrolet for the $50,000.00 paid by tortfeasor's liability carrier, leaving from the motorcycle/1964 Chevrolet policy $10,000.00 toward the stacked total of $325,000.00 coverage to be prorated against the $60,000.00 due by the underinsurance carriers.

Thus, according to Great American, Virginia Farm Bureau would pay $1,846.15 under the policy covering the motorcycle/1964 Chevrolet; Virginia Farm Bureau would pay $16,615.38 under the policy covering the Mercury/GMC/Oldsmobile; Early Settlers would pay $18,461.54 under the policy covering the 1974 Chevrolet; Liberty Mutual would pay $18,461.54 under the policy covering the 1972 GMC dump truck; and Great American would pay $4,615.38 under the policy covering the 1988 Ford.

Alternately, Great American argues, if no intrapolicy stacking is permitted, the Virginia Farm Bureau policy on the motorcycle would receive a full $30,000.00 credit for the amount paid by the tortfeasor's liability carrier. The remaining $20,000.00 credit should benefit Great American which covered an uninvolved vehicle but one owned by the decedent (the 1988 Ford).

The total underinsurance stacked coverage (including $5,000.00 from Great American) should be prorated against the $60,000.00 payable as follows: Virginia Farm Bureau would pay $7,659.57 under the policy on the Mercury/GMC/Oldsmobile; Early Settlers would pay $25,531.91 under the policy on the 1974 Chevrolet; Liberty Mutual would pay $25,531.91 under the policy on the 1972 GMC dump truck; and Great American would pay $1,276.60 under the policy

on the 1988 Ford (the remaining $5,000.00 of the policy not subject to the credit).

## I. *Intrapolicy Stacking*

Each Virginia Farm Bureau policy provided underinsurance coverage for more than one vehicle for which a separate premium was charged. While Great American acknowledges that *Goodville Mut. v. Borror*, 221 Va. 976 (1981), holds that if proper language is contained in the policy, intrapolicy *uninsured* coverage may not be stacked, Great American says the language of the underinsurance provisions of the Virginia Farm Bureau policies is not sufficient to prohibit intrapolicy stacking of underinsurance coverage.

The court concludes, as Virginia Farm Bureau argues, that the uninsured and underinsured coverage provisions in the endorsements to the policies are to be read together -- by their terms -- and read together are clearly sufficient to prohibit intrapolicy stacking of the uninsured and underinsured coverages.

## II. *Stacking of Various Separate Policies Providing Underinsured Coverage*

Virginia Farm Bureau and Early Settlers argue that all the policies providing underinsurance coverage should be stacked to determine the amount of underinsurance coverage available.

Disregarding for the moment the issues of primary underinsured coverage and credit against underinsured coverage for the amount paid by the tortfeasor's liability carrier, the court concludes that stacking of the coverage amounts of the various policies is required. See Va. Code Section 38.2-2206, in effect June 30, 1988, providing that a motor vehicle is underinsured to the extent that the total amount of bodily injury coverage applicable to the operation of the underinsured vehicle is less than the total amount of underinsured coverage afforded to any person injured as a result of the operation of the underinsured vehicle.

Thus, in the view of the court, separate policy stacking is clearly required.

III. *Credit against Underinsurance Coverage for Amount Paid by Tortfeasor's Liability Carrier*

The next issue is whether, and if so, to which under-insurance coverages, credit should be allowed for the $50,000.00 paid by the tortfeasor's liability carrier.

By amendment to Va. Code § 38.2-2206, not applicable to this case, the General Assembly has addressed the question of credit and of proration (to be considered in the next section of this ruling).

The statute, as amended, provides that if an injured person is entitled to underinsured coverage under more than one policy, the following order of priority of policies applies and any amount available for payment by the tort-feasor shall be credited against such policies in the following order of priority:

> 1. The policy covering the motor vehicle occupied by the injured person at the time of the accident;
> 2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;
> 3. The policy covering a motor vehicle not involved in the accident under which the injured person is an insured other than a named insured.
> 4. Where there is more than one insurer providing coverage under one of the payment priorities set forth, their liability shall be apportioned as to their respective underinsured motorist coverage.

Code § 38.2-2206 (as amended effective July 1, 1988).

Liberty Mutual argues that in the case at bar, in which the 1988 amendments are not applicable, there is no credit to be calculated against the underinsurance coverages based on the amount paid by the tortfeasor's liability carrier.

The court does not agree. The amount paid by the tortfeasor's liability carrier must be credited in some manner against the underinsurance coverage. Since the underinsurance coverage on the vehicle occupied by the

decedent is primary coverage by policy definition, that carrier, Virginia Farm Bureau, is entitled to a credit of $30,000.00 against its policy on the motorcycle, that being the full amount of its coverage under that policy.

In the absence of amended Code § 38.2-2206, the court concludes that the balance of the credit, $20,000.00 proportionately benefits each of the other carriers, as argued by Virginia Farm Bureau and Early Settlers, leaving each of the carriers the following effective amount of coverage:

| | | |
|---|---|---|
| Virginia Farm Bureau | (credit $2,353.00) | $27,647.00 |
| Early Settlers | (credit $7,843.00) | $92,157.00 |
| Liberty Mutual | (credit $7,843.00) | $92,157.00 |
| Great American | (credit $1,961.00) | $23,039.00 |
| | | $235,000.00 |

IV. *Proportion*

The court concludes that prior to the 1988 amendment, each policy, except the policy covering the motorcycle, is excess. In accordance with the rule of *State Farm v. U.S.A.A.*, 211 Va. 133, 138 (1970), each policy should bear its proportionate share of the $60,000.00 owed by the underinsurance carriers, calculated by applying the balance of the underinsured coverage under each policy (see Part III) divided by $235,000.00, the total available coverage (see Part III), multiplied by the total sum owed, $60,000.00, as follows:

| | |
|---|---|
| Virginia Farm Bureau | $ 7,059.00 |
| Early Settlers | 23,529.00 |
| Liberty Mutual | 23,529.00 |
| Great American | 5,883.00 |
| | $60,000.00 |

The 1988 amendment not being applicable, while logical interpretation of the then existing statute requires that a credit be applied to the coverage of the primary underinsurance carrier and, if any more credit is available,

it be prorated among the excess carriers, neither the pertinent statute nor the insurance contracts allows but a proportional division of the underinsured obligation among, in this case, only the excess carriers.